Curia, per

O’Neall, J.
That the Act of’39 is a repeal of the Act of ’95, is fully shown by a reference to the rules stated on that subject, in the case of Righton vs. Wood, (Dud. Law Rep. 164;) Act of ’39, 16; 5 Stat. at Large, 270.
The single fact, that the penalty of the last Act is a greater one than that imposed by the former, makes it impossible that the two should stand together as cumulative, or to be construed in pari materia. The same offence cannot at the same time be subject to two different punishments. The fact that this would be the case if two statutes were considered to be of force, shows the maxim, “ leges posteriores priores abrogant,” must have effect.
The case of The State vs. Ben. Evans, (3 Hill, 190,) is an instance of the application of this principle. The defendant was indicted under the Act of 1817, for trading with a slave without a written ticket from his master or employer, by selling to him spirituous liquors. The Act of 1834 subjects any one who shall sell, exchange, give or deliver spirituous liquors to a slave, without a written ticket, to a less penalty than is prescribed by the Act of 1817. It appeared that the defendant was a shopkeeper, and vender and retailer of spirituous liquors. It was held that the Act of 1834 *was a repeal of the Act of 1817, as to the offence of which the defendant was guilty.
The Act of ’39 increases the penalty to be paid by the father of a bastard child, from £60 to £70. This is in itself a repeal of the former statute, unless the Act of ’39 does not cover the case where “ a white *222 woman shall be delivered of two or more bastard children.” If it does not, it cannot repeal the Act of ’95, which in terms provides for the case, “if any white woman be delivered of a bastard child or children.”
I think, however, that the Act of ’39 will, on a fair construction, provide for the same state of things. (Acts of 1839, p. 16.) The words of the Act are “if any white woman be delivered of a bastard child.” These words embrace the birth of one or more children. For as to each the mother is delivered of a bastard child, and the maintenance of a bastard child is the object sought to be provided for. The person to be proceeded against for the penalty, is described in the Act to be “ the father of her child.” If there are more than one, he may fulfil that description as to each, as well as to a single one. If it should so happen, that where two or more children are born together, that they should be the offspring of different fathers, then, under the words of this Act, each father may be indicted. Under the Act of ’95, it would be very doubtful whether that could be done ; and that doubt, I presume, led the Legislature of ’39, to drop the words “children,” as unnecessary. The object of the recognizance, directed to be entered into, is to secure the penalty “ for the maintenance of the child.” The words may as well mean each child, when there are more than one, as a single child. The only difference between the two Acts, in this respect, is, that in the former Act, the children born together are to be considered as one offence, for which the father answered jointly, but was subjected to the penalty of £60 for each child. In this Act, the birth of each child is considered as the offence for which the father is to answer, and the penalty is to be secured separately for the maintenance of each.
In the argument here, it was suggested that as to this defendant, this Act ought to be regarded as ex pout facto, as the children were begotten before its passage. But the offence, according to the plain words of the Act, is, “if any white woman be delivered of a bastard child,” then the father shall be *proceeded against for the maintenance. Unquestionably the act,(a) however immoral, is not noticed or regarded as criminal until the delivery. That makes the offence as to the father, and not anything which preceded it.
It is said that this indictment is an exact transcript of that on which a conviction has taken place, and hence that that conviction must be a bar to this indictment. This would prima facie appear to be true ; but yet like all other prima facie showings, it may be obviated. To sustain the plea of “ autrefois convict,” the crime must be the same for which the defendant was before convicted, 1 Chit. C. L. 461. To such a plea the solicitor might, as to a plea of autrefois acquit, reply and take issue upon thé averments of identity, (Ib. 460, 464.) Under these authorities the solicitor may reply to the plea of autrefois convict, that the mother was delivered of two children, and that the former indictment and conviction was for one of them, and this indictment is for the other. In such replication, more certainty is necessary than in the indictment, and therefore in it the children should be distinguished by name, complexion, hair and sex, or at least by some of these marks of separate identity. I perceive that the solicitor demurred to the plea, and if we were, therefore, *223 strictly to regard the pleadings, we should be obliged to sustain the decision of the judge below. For there is nothing on the indictment which shows that this indictment is for an offence different from that set out in the former indictment; but as the case here was argued upon its merits, and as the object is to settle a doubtful question of practice under a recent Act of the Legislature, and not to obtain an advantage by pleading, the case has been and will be considered as if the proper fact had been replied to avoid the plea.
It was argued that separate recognizances could not be so framed as to provide certainly for the maintenance of each child. The difficulty in this case will be avoided by distinguishing the children in the replication, and in the recognizances which may be hereafter taken, if the defendant should be convicted. In all future cases, the indictments and recognizances should distinguish each child by name, complexion, hair and sex, or by some of these means of separate identity.
The motion to reverse the decision below is granted, and the solicitor has leave to withdraw his demurrer, and to reply to the plea of autrefois convict.
The whole Court concurred.

 7 Rich. 365; 10 Rich. 366. An.